UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **TALBOT'S PHARMACEUTICALS FAMILY PRODUCTS L. L. C.** | **CIV. ACTION NO. 3:20-0716** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SKANDA GROUP INDUSTRIES L. L. C., ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue [doc. # 27] filed by Defendants Skanda Group of Industries, L.L.C. and Nagendra Karri.   The motion is opposed.   For reasons that follow, it is recommended that the motion to dismiss for lack of personal jurisdiction be GRANTED-IN-PART and DENIED-IN-PART, and that the motion to dismiss for improper venue or in the alternative, to transfer venue be DENIED.

## Background

On June 5, 2020, Plaintiff Talbot's Pharmaceuticals Family Products, L.L.C. ("Dr. Talbot") filed the instant diversity suit for breach of contract and fraud against Defendants, Skanda Group of Industries, L.L.C. ("Skanda") and Nagendra Karri ("Karri"),[1]  Skanda's alleged alter ego.[2]  Following at least two amendments to properly allege subject matter jurisdiction, *see*

---

[1]  Plaintiff filed a prior suit against Skanda less than two weeks earlier, but voluntarily dismissed the matter before issue was joined.   *Talbot's Pharmaceuticals Family Products L. L. C. v. Skanda Group of Industries, L.L.C.*, Civ. Action No. 20-0667 (W.D. La. 2020).

[2]  Plaintiff initially also sued Skanda HEI, L.L.C., and Chetna Jhamb, but later voluntarily dismissed them.   *See* Aug. 24, 2020, Notice of Dismissal [doc. # 24].

doc. #s 19-26, the operative complaint at this time is the Second Amended Complaint for Breach

of Contract and Fraud ("SAC") [doc. # 25].

According to the SAC,

[t]his action arises out of Defendants' bait and switch scheme aimed at defrauding
Plaintiff of almost $2 million.  Plaintiff Dr. Talbot is in the health and wellness
industry.  When the Corona Virus pandemic struck, Dr. Talbot was approached by
buyers and sellers of face masks and other medical products.  Defendants offered
to sell Dr. Talbot 1 million KN95 face masks of a specific style for immediate
delivery in the United States.  On the basis of Defendants' representations and
offer regarding the specific style of face mask and immediate delivery, Dr. Talbot
secured a customer, Harris County Texas.  Dr. Talbot accepted Defendants' offer
and paid Defendants $1.8 million in consideration for the sale of 1 million units of
the specified KN95 face mask that would be immediately delivered to Harris
County Texas.  To expedite the delivery, Dr. Talbot paid to air ship the face masks
to Texas.  Defendants failed to deliver the face masks timely causing Dr. Talbot to
lose the Harris County sale.  Subsequently, Defendants shipped to Dr. Talbot
750,000 face masks that were not as specified in the order and of an inferior design.
Dr. Talbot rejected the shipment, notified Defendants that the goods shipped were
not as ordered and demanded return of its $1.65 million payment for the 750,000
face masks and expedited shipping charges.

(SAC).

Dr. Talbot seeks an award of actual damages, including lost profits, attorneys' fees and

expenses, plus legal interest.  *Id.*

On September 14, 2020, Defendants Skanda and Karri filed the instant motion to

dismiss for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2)

and 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, to transfer

venue to the United States District Court for the Central District of California under 28

U.S.C. § 1404(a) (sometimes referred to by Movants as § 1406).  Following delays for

the parties to conduct jurisdictional discovery, Plaintiff filed its opposition to the motion

to dismiss on March 17, 2021.  [doc. #s 38-39].  Defendants filed their reply brief on

March 24, 2021.  [doc. # 40].  Accordingly, the matter is ripe.

2

**Personal Jurisdiction**

I.      **General Principles**

When a defendant timely questions a federal district court's *in personam* jurisdiction, the plaintiff has the burden of proving that the court has jurisdiction over the defendant.   *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831B32 (5th Cir.1986), *on reh'g in part*, 836 F.2d 850 (5th Cir.1988) (citations omitted); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir.2018) (citation omitted) (plaintiff's burden to establish personal jurisdiction).

If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiff only need make a prima facie showing of the jurisdictional facts.   *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). In assessing whether plaintiff has made a prima facie showing, the court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation."   *Id*.   (citation and internal quotation marks omitted).[3]   However, the court need not credit plaintiff's conclusory allegations, even if uncontroverted.   *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted).

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as, (1) the long-arm statute of the forum state confers personal

---

[3]   Of course, even if the plaintiff were to defeat a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, then the plaintiff still must prove the jurisdictional facts at trial by a preponderance of the evidence.   *Travelers Indem. Co., supra*.

jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not violate due process protections under the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. *See* LA. R.S. § 13:3201(B); LA. CODE CIV. P. ART. 6(B). Therefore, the sole inquiry is whether exercising *in personam* jurisdiction over the defendant comports with federal due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citation omitted).

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923; 131 S.Ct. 2846, 2853 (2011) ("*Goodyear*") (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316; 66 S.Ct. 154 (1945)). In the years following its landmark decision in *International Shoe*, the Supreme Court has "differentiated between *general* or all-purpose jurisdiction, and *specific* or case-linked jurisdiction." *Goodyear, supra*; *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ____ U.S. ____, 137 S.Ct. 1773, 1780 (2017) (emphasis added).

In this case, Dr. Talbot contends that this court "has both general and specific personal jurisdiction over Defendant Skanda and specific jurisdiction only over Defendant Karri." (Pl. Opp. Memo., pg. 5). The court will address general and specific jurisdiction separately.

4

II.     **General Jurisdiction**

a)      <u>Law</u>

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, ___ U.S. ___, 137 S.Ct. 1549, 1558 (2017) ("BNSF") (citations omitted).[4]   The "paradigm" forums where a corporate defendant is considered "at home," are the corporation's *place of incorporation* and its *principal place of business*.   *Id*. (citing *inter alia*, *Daimler AG v. Bauman*, 571 U.S. 117, 137; 134 S.Ct. 746, 760 (2014) (emphasis added). Further, in an "exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State."   *BNSF, supra* (citations and internal quotation marks omitted).

In *Daimler*, although the Supreme Court discussed where *corporations* could be deemed "at home" for purposes of general jurisdiction, one of the entities at issue in that case was a *limited liability company* ("LLC") -- Mercedes-Benz USA, L.L.C. ("MBUSA").   *Daimler, supra*.   Nevertheless, the Supreme Court did not distinguish between these different entities. In fact, the Court ultimately concluded that it could not exercise general jurisdiction over Daimler because "neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there."   *Daimler*, 134 S.Ct. at 761-62.

Citing *Daimler*, other district courts have determined that LLCs may be considered "at

---

[4] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . ."   *Goodyear,* 564 U.S. at 924; 131 S.Ct. at 2853–54 (citation omitted).

home" for purposes of general jurisdiction in the states where they were organized and where they have their principal place of business.   *See Duncanson v. Wine & Canvas IP Holdings LLC*, Civ. Action No. 16-0788, 2017 WL 6994541, at *4 (S.D. Ind. Apr. 20, 2017); *Miller v. Native Link Constr., LLC*, No. 15-1605, 2017 WL 3536175, at *30 (W.D. Pa. Aug. 17, 2017); *Blocker v. Black Entm't Television, LLC*, Civ. Action No. 17-1406, 2018 WL 3797568, at *6 (D. Or. June 26, 2018), *R&R* a*dopted*, 2018 WL 3795219 (D. Or. Aug. 8, 2018); *Garcia Hamilton & Associates, L.P. v. RBC Capital Markets, LLC*, 466 F.Supp.3d 692, 699 n5 (S.D. Tex.2020).

Furthermore, in *Frank v. P N K (Lake Charles) L.L.C.*, the Fifth Circuit observed that

neither the Supreme Court nor a sister circuit has directly addressed whether the type of artificial entity, *e.g.*, partnership or limited liability company, affects the "at home" analysis.  Our circuit and several in-circuit district courts have applied the "at home" test to entities other than corporations, albeit without analyzing whether the entity type changes the outcome.

Here, we are examining the corporate structure of a limited liability company whose physical corporate operations are domiciled in Louisiana. The rationale behind this test is to rely on a business's domicile or place of principal business as a guidepost in ascertaining where the business is "at home." Considering this premise, the entity type is not germane to this jurisdictional analysis; *instead it is the company's domicile that merits attention*.

*Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 338 n10 (5th Cir. 2020) (emphasis added) (internal citations omitted).

The Fifth Circuit traditionally has recognized that a corporation's domicile is determined by the place where it was organized, "which may bear no relation to the location of the company's business operations or its decision-making activities."   *S. D'Antoni, Inc. v. Great Atl. & Pac. Tea Co., Inc.*, 496 F.2d 1378, 1383 (5th Cir.1974); *Simms Oil Co. v. Wolfe*, 6 F.2d 504, 506 (5th Cir.1925) ("a corporation's domicile is in the state where it was chartered . . .").   Once the court finds that a defendant has "continuous and

systematic" contacts with the forum such that the party may be considered "at home" in that state, case law suggests that the court also must find that the exercise of jurisdiction in the forum state would not transgress "traditional notions of fair play and substantial justice."  *See, e.g.*, *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008).

More recently, however, the Supreme Court clarified that the multi-consideration reasonableness check applied in *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty*, 480 U.S. 102, 113; 107 S.Ct. 1026, 1033 (1987), was limited to personal jurisdiction on the basis of specific jurisdiction, and did not apply in the context of general jurisdiction.  *Daimler*, 571 U.S. at 139 n20; 134 S.Ct. at 762.  Indeed, if a corporate entity is "at home" in the forum state, then the second-step inquiry regarding the reasonableness of exercising jurisdiction in that forum is superfluous.  *Id.*

b)   <u>Pertinent Facts</u>

Defendant, Skanda, was organized as a Louisiana limited liability company in 2017. (Articles of Organization; Pl. Opp. Brief, Exh. 13 [doc. # 39-8]; Nagendra Karri Deposition, pgs. 20, 22, 24; Pl. Opp. Brief, Exh. 45 [doc. # 39-25]).   At the time of its formation, Skanda's members were, and still are, Nagendra Karri and Chetna Jhamb, who listed addresses in Canoga Park, California.  *Id.*; *see also* Decl. of Chetna Jhamb; M/Dismiss, Exh. B [doc. # 27-2] (Jhamb holds a small membership interest in Skanda).   As of October 2020, the Louisiana Secretary of State listed Skanda's status as active, but not in good standing, with its last annual report filed on March 31, 2020.  *See* La. Sec. of State Cert.; Pl. Opp. Brief, Exh. 14 [doc. # 39-9].[5]   Skanda's

---

[5]  Skanda has not been dissolved or terminated.   *See* La. Sec. of State Cert.; Pl. Opp. Brief, Exh.

registered agent is Legalinc Corporate Services, Inc., in Baton Rouge, Louisiana.  *Id*.[6]

At his February 12, 2021 deposition, Karri explained that he started Skanda in Lake Charles, Louisiana, because of a Louisiana initiative for start-up companies.  (Karri Depo., pg. 27).  Karri had hoped to do business in Louisiana, but the plans failed to materialize.  *Id*., pgs. 24-25.

Ultimately, Skanda never did any business in Louisiana, and, a few months after its formation, Skanda moved all of its operations to Los Angeles, California, where it has remained ever since.  *Id*., pg. 20; Declaration of Nagendra Karri; M/Dismiss, Exh. A [doc. # 27-1]. Skanda paid rent only for around three months in Lake Charles after its formation.  (Karri Depo., pgs. 27-28).

"For years, Skanda has been delivering a wide-selection of personal protective equipment ("PPE") to medical supply retailers, hospitals and government agencies."  (Karri Decl.). Recently, in response to COVID-19, Skanda has been supplying medical surgical gowns, respirator masks, sanitizers, and the like.  *Id*.  Skanda does not manufacture these items; it acts as a wholesale distributor of these items from factories that it contracts with in China and India. (Karri Depo., pgs. 18-19).

c)    Analysis

The evidence adduced by the parties establishes that Skanda's principal place of business is in California, but that its place of formation, and thus, its domicile, remains in Louisiana.

_____

15 [doc. # 39-10].

[6] Rather than serve Skanda's registered agent in Louisiana, Plaintiff used a commercial courier to serve Skanda in California.  *See* Acknowledgment of Service [doc. # 6].  Skanda did not challenge the sufficiency of this method of service.

Accordingly, for purposes of general jurisdiction, Skanda is considered "at home" in California

and Louisiana.   *See Daimler, supra*; *Frank, supra*.   Furthermore, because Skanda is "at home,"

in Louisiana, it is fair and reasonable to exercise personal jurisdiction over Skanda in this forum.

## III.   **Specific Jurisdiction**

a)   Law

"Specific" jurisdiction exists when the "plaintiff's cause of action . . . arises out of or

results from the defendant's forum-related contacts."   *Willow Bend, L.L.C. v. Downtown ABQ

Partners, L.L.C.*, 612 F.3d 390, 392 (5th Cir.2010).   Stated differently, "[s]pecific or case-linked

jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e.,

an activity or an occurrence that takes place in the forum State and is therefore subject to the

State's regulation)."   *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1125, n.6 (2014) (quoted

source and internal quotation marks omitted).   Specific jurisdiction is a claim-specific inquiry.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).   Thus, "[a] plaintiff

bringing multiple claims that arise out of different forum contacts of the defendant must establish

specific jurisdiction for each claim."   *Id*.; *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir.2009).

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether
> it purposely directed its activities toward the forum state or purposefully availed
> itself of the privileges of conducting activities there; (2) whether the plaintiff's
> cause of action arises out of or results from the defendant's forum-related contacts;
> and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal,* 971 F.3d 485, 490 (5th Cir.2020) (quoting *Seiferth*, 472 F.3d

at 271).   If the plaintiff can successfully establish the first two prongs, then the burden

shifts to defendant to show that exercising jurisdiction would prove unfair or unreasonable.

*Id.*

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden, supra.* The court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there.  *Id.*  (citation omitted).   In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden, supra* (citation omitted).

b)  Evidence Presented

Nagendra Karri is the President, CEO, and managing member of Skanda.   (Karri Decl.). At all relevant times, Karri was/is a California "resident."  *Id.*  He is an American[7] film director, producer, screenwriter, and entrepreneur.  *Id.*   Karri manages Skanda's business and marketing operations from the company's headquarters in Los Angeles, California.  *Id.*

In early 2020, as the world was hit by the COVID-19 pandemic, the demand for personal protection equipment ("PPE") outgrew supply.  *Id.*   Karri's friend, Brian Malloy (referred to by Karri in his deposition as "Royal"), mentioned to Karri that he knew a sports agent in California by the name of Jeff Guerriero, who might have some clients who were interested in Skanda's products.  *Id.*, Karri Depo., pgs. 34-35.   Karri understood that Guerriero was a sports agent and attorney from Louisiana, but that he had homes in, and frequently traveled to California.   (Karri Decl.).

Malloy, Guerriero, and Karri communicated via regular telephone calls and text

---

[7]  Albeit, Karri is not a U.S. citizen or a permanent resident.   (Karri Depo., pgs. 14-15.)

messages, but never met in person.   *Id*.   Karri stated that he made it clear to Malloy and Guerriero that neither he, nor Skanda, conducted business in Louisiana.   *Id*.   In due course, Guerriero introduced Karri to Abe Hakim ("Abe"), whose family owned Nuby baby products, as well as Plaintiff Dr. Talbot.   *Id*.   Abe told Karri that he was interested in purchasing sanitizers from Skanda.   *Id*.

According to Karri, Guerriero gave Karri Abe's cell number, and Abe texted Karri, whereupon they agreed upon a time for Abe to call Karri.   (Karri Depo., pgs. 44-45).   Karri learned that Nuby was located in Louisiana around the same time that Abe contacted him.   *Id*., pgs. 47-48

The first text between Abe and Karri occurred on March 20, 2020.   *Id*., pg. 47; Pl. Opp., Exh. 11 [doc. # 39-6].   The initial call between them also transpired on that date.   *See* Karri Depo., pgs. 47-48; Decl. of Abe Hakim; Pl. Opp. Brief, Exh. 43 [doc. # 39-23].   Abe's main focus during the discussions was hand sanitizers.   *Id*.   On March 20, 2020, Karri texted photos of hand sanitizer and mask products to Abe.   *See* Text Messages; Pl. Opp. Brief, Exh. 11.   Karri also included prices for the sanitizer, masks, and surgical gloves.   *Id*.   Karri sent additional texts to Abe over the next seven days.   *Id*.   Karri exchanged emails with Abe and knew that Abe and Dr. Talbot were in Louisiana.   *See* March 27, 2020, email from N. Karri to A. Hakim; Pl. Opp. Brief, Exh. 24 [doc. # 39-17].   On March 29, 2020, Abe texted Karri that they were interested in ordering K95 masks that they could put their logo on.   (Text Messages; Pl. Opp. Brief, Exh. 11). *Id*.   Karri replied that he had seventeen K95 suppliers in his syndicate.   *Id*.

Abe averred that he made it clear to Karri, that should Dr. Talbot purchase hand sanitizer from Skanda, the product would have to be delivered to Dr. Talbot's warehouse in Louisiana.

11

(Abe Decl. [doc. # 39-23]).

At some point, Abe's discussions with Karri narrowed to, and focused solely upon facemasks.   *Id*.   Abe stated that Karri provided him with promotional materials in an effort to convince Dr. Talbot to purchase products from Skanda.   *Id*.   Ultimately, Abe asked his father, Joseph Hakim ("Joseph"), to take over the negotiations with Skanda.   *Id*.   Karri never met Abe in person, nor did he ever travel to Louisiana to meet with Abe or anyone else from Dr. Talbot. (Karri Decl.).

On April 1, 2020, Joseph sent an email to Karri to set up a telephone conference.   *See* Text Messages; Pl. Opp. Brief, Exh. 11 [doc. # 39-6]; Apr. 1, 2020, email from J. Hakim to N. Karri; Pl. Opp. Brief, Exh. 24 [doc. # 39-17].   Karri tried to telephone Joseph on April 2, 2020, but the calls went to voicemail.   *Id*.   Abe texted Karri that Joseph would call Karri in 30-45 minutes.   *Id*.   Later on April 2, 2020, Joseph texted Karri that he would call him in a few minutes.   (Texts; Pl. Opp., Exh. 12 [doc. # 39-7]).

Joseph stated that he had extensive discussions with Karri via email, text messages, and over the telephone.   (Joseph Hakim Declaration; Pl. Opp. Brief, Exh. 44 [doc. # 39-24]).   He averred that he made it clear to Karri "that some or all of the products would need to be shipped to Louisiana."   *Id*.   Joseph added that Karri never told him that Skanda did not do business in Louisiana.   *Id*.   To the contrary, Karri told Joseph that he worked with Jeff Guerriero "here in Monroe, Louisiana."   *Id*.

The facemasks that Dr. Talbot ordered from Skanda were manufactured by Shandong Bosen.   *Id*.   Karri handled all of the regulatory approval documents for the facemask sale, and provided Joseph with the documents for Shandong Bosen on April 15, 2020.   *Id*.

12

The text messages between Joseph and Karri indicate that Karri sent an initial invoice from Skanda to Dr. Talbot on April 6, 2020, for the sale of one million KN95 respirator masks, at a total price of $1.8 million, and denoting that the "[i]nvoice for goods is FOB Shenzhen Airport."   (Text Messages; Pl. Opp. Brief, Exh. 12 [doc. # 39-7]; *see also* "Performa [sic] Invoice" from Skanda to Dr. Talbot; Pl. Opp. Brief, Exh. 2 [doc. # 39-2]).   On April 8, 2020, Dr. Talbot issued a purchase order to Skanda for one million KN95 masks for a total price of $1.8 million.   (Manufacturer Purchase Order; Pl. Opp. Memo., Exh. 2 [doc. # 39-2]).   The freight terms were "FOB PORT."   *Id*.   Dr. Talbot further agreed to pay the cost of air freight from Skanda's factory in China.   (Decl. of J. Hakim).   Dr. Talbot wired the full payment of $1.8 million to Skanda on April 10, 2020.   *Id*.; Wire Confirmation; Pl. Opp. Brief, Exh. 10 [doc. # 38-1, pg. 3].

On April 8, 2020, Joseph texted Karri that he was trying to determine where to quote the shipment from.   (Text Message; Pl. Opp. Exh. 12 [doc. # 39-7]).   Karri texted Joseph on April 10, 2020, that he had had a couple of shipping options "to deliver to your warehouse."   *Id*. Karri also emailed Abe and Joseph that the factory could deliver to both the FedEx terminals in Shenzhen and Hong Kong.   (April 10, 2020, email from N. Karri to A. Hakim; Pl. Opp. Brief, Exh. 10 [doc. # 38-1, pg. 194]).   He advised Abe to obtain a quote from FedEx for pickup from the Port (Shenzhen or Hong Kong), whichever was cheaper, because the order was "FOB (Freight on Board)."   *Id*.   That same date, Joseph advised Karri that the "address is dependent on what freight line it [is] going by."   *Id*.   However, the address was going to be in Houston, Texas.   *Id*.

According to Joseph, 250,000 of the facemasks were to be shipped to Texas, with the

remaining 750,000 to be shipped to Monroe, Louisiana.   (J. Hakim Decl.).   Although the sale of

the masks was FOB Shenzhen Airport, Skanda, including its agent in Asia, Lisa Pan, helped

facilitate the shipment of the masks to Texas and Louisiana.   (J. Hakim Decl.; Text Messages

between J. Hakim and N. Karri).[8]   Karri testified, however, that he and Skanda had nothing to

do with the freight forwarding issues.   (Karri Depo., pgs. 85-86).   Indeed, Karri maintained that

the minute they delivered the product to the freight forwarder in China, the deal was "done."

*Id*., pg. 90.

On April 14, 2020, Joseph advised FedEx to begin shipping 2000 pounds per day from

Shenzhen to Houston.   (Apr. 14, 2020, email from J. Hakim to G. Matheny; Pl. Opp. Brief, Exh.

10 [doc. # 38-1, pg. 173]).

In an April 20, 2020 email, Joseph forwarded Karri a wire confirmation for the sum of

$212,175 that Dr. Talbot had sent to Micro Amobuyer Technology Co., Limited in Hong Kong

for 750,000 pieces, and a request for confirmation that "they will pick up Tuesday [m]orning."

(Apr. 20, 2020 email from J. Hakim to N. Karri; Pl. Opp. Brief, Exh. 10 [doc. # 38-1, pgs. 144-

147].   At his deposition, Karri confirmed that he had nothing to do with the Micro Amobuyer

Company.   (Karri Depo., pg. 77).

On April 26, 2020, Jessica at "jhdex.cn" advised Joseph that there was a delay associated

with the 750,000 masks because, *inter alia*, Joseph had missed the initial schedule.   (Apr. 26,

2020 email from Jessica to J. Hakim, et al.; Pl. Opp. Brief, Exh. 10 [doc. # 38-1, pg. 234].

Joseph replied to Jessica the next day:   "[p]lease make sure that the shipment gets on the plan[e]

---

[8]  On April 17, Karri forwarded a freight quote for 750,000 pieces from Shenzhen Freight
Shipping Company to Joseph.   *See* April 17, 2020 email from N. Karri to J. Hakim; Pl. Opp.
Brief, Exh. 23 [doc. # 39-16].

today or send us our money back and we will ship by boat . . ."  *Id*.

All of Joseph's discussions and negotiations with Karri occurred over the telephone, through text messages, and, to a much lesser extent, via email.   (J. Hakim Decl.).   Joseph did not travel outside of Louisiana in connection with his dealings with Skanda.  *Id*.

Upon delivery of the 750,000 masks to Monroe, Louisiana, Dr. Talbot inspected them and discovered that they were not the masks that it had ordered.  (J. Hakim Decl.).   Karri testified, however, that after the product arrived, Joseph called him and told him that he had lost his buyer and asked whether Karri could help him.   (Karri Depo., pgs. 80-81).   Karri assured Joseph that he could assist "because this [was] just the first deal."  *Id*.   He was hoping to do more business.  *Id*.   In May 2020, in an effort to help Dr. Talbot, Karri bought 1,000 of the masks that Dr. Talbot had in its Monroe warehouse and sold them to a company in Hawaii.  *Id*., pgs. 94-96.

On July 13, 2020, Skanda wired $20,000 to Jeff Guerriero as "part of the deal" that Karri had arranged with Royal/Brian Malloy as commission for facilitating the introduction to Abe Hakim.  (Karri Depo., pgs. 38-39).

c)     Analysis

Because specific jurisdiction is a claim-specific inquiry (at least in this circuit), the court will consider Defendants' contacts with the forum state as to each claim.

i)     *Breach of Contract*

For a breach of contract claim, "only those acts which relate to the formation of the contract and the subsequent breach are relevant . . . [which] includes prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual

15

course of dealing." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir.2018) (internal citations and quotation marks omitted).   It is manifest, however, that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.   *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir.1986) (citations omitted).

In its brief, Plaintiff emphasize the significant amount of communications and information that Defendants transmitted to the forum state for purposes of securing the contract between Plaintiff and Defendants.   However, initiating communications with a resident of the forum state, wiring payments to the forum state, and entering into a contract with a resident of the forum state does not suffice to confer personal jurisdiction over a non-resident defendant. *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir.1985); *see also Holt Oil & Gas Corp., supra*.

Plaintiff also argued that Defendants intended and hoped to have an enduring relationship with Dr. Talbot and also possibly with other residents of the forum state.[9]   However, there is no indication that these plans ever came to fruition.   In any event, there is no evidence that Plaintiff's breach of contract claim that forms the basis for this suit arises out of, or results from, these unrealized contacts with the forum state.[10]

Plaintiff further touts the fact that Karri paid a commission to a forum resident, Jeff

---

[9]  In an email from an unknown date, Karri asked Joseph to reach out to the Louisiana governor because the State of Louisiana purportedly was experiencing a shortage of PPE.   (Karri Depo., pgs. 58-60).   Karri explained that he hoped that Nuby could supply the product to the governor, and Skanda could supply the product to Nuby.   *Id*.

[10]  Likewise, there is no evidence that the two other limited liability companies that Karri formed in Louisiana are related to the instant cause of action.

Guerriero, for his assistance with facilitating the subject sale with Dr. Talbot.   Karri explained, however, that his commission agreement was with Malloy, a California resident, who then directed Karri to pay a portion of the fee directly to Guerriero.

Plaintiff contends that Skanda's website establishes that it advertises, promotes, and offers facemasks for sale to Louisiana residents.   However, Plaintiff has not shown that Defendant's website was the moving force behind the subject sale, or even so, that a lone sale to the forum state derived from the website may satisfy the "purposeful availment" requirement for the exercise of personal jurisdiction.   *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, Civ. Action No. 20-0904, 2020 WL 6880966 (W.D. La. Oct. 23, 2020), *R&R adopted,* 2020 WL 6878346 (W.D. La. Nov. 23, 2020).

Finally, Plaintiff argued that Defendants knew that at least part of the purchase order would be delivered to Louisiana.   However, the terms of the purchase order clearly specified that the sale was FOB (freight on board) in China.   Furthermore, according to the Second Amended Complaint, Plaintiff contemplated that all one million KN95 face masks would be "immediately delivered to Harris County Texas."   (2nd Amend. Compl.).   It was only when Defendants "failed to deliver the face masks timely" that Dr. Talbot lost the Harris County sale. *Id*.   In other words, the parties did not initially contemplate that the contract would be performed in Louisiana.[11]   Defendants' original obligation under the purchase order ended at the port in China.

According to Dr. Talbot, Defendants did not timely deliver the face masks to the port in China, as required by the agreement.   Therefore, "[i]n an effort to mitigate its damages, Plaintiff

---

[11] It was foreseeable that payment could be wired from Louisiana.

persuaded the Texas customer to purchase 250,000 face masks," which were delivered to the Texas customer. *Id*., ¶ 13. "In a further effort to mitigate its damages, Plaintiff found another customer for the remaining 750,000 face masks and instructed Defendants to send immediately the 750,000 face masks to Plaintiff in Monroe, Louisiana . . ." *Id*., ¶ 14.

In short, delivery of the product to Louisiana only came about after the agreement was executed, and as a result of Plaintiff's attempt to mitigate its damages. This after-the-fact re-direction of the product to the forum state – when the purchase order specified that Defendants' obligation ended with FOB in China – does not demonstrate Defendants' purposeful availment of the benefits of the forum state.

To be sure, there is evidence that Defendants later helped to facilitate the delivery of the product to Louisiana and then helped Plaintiff to sell some of the product that Plaintiff had in storage here. However, there is no evidence that Defendants were obliged to take on these additional roles as part of their agreement with Plaintiff, or that these limited and gratuitous actions to assist a Louisiana-based customer stemmed from Defendants' own contacts with the forum, rather than the happenstance that the beneficiary of their efforts resided here. Moreover, these post-contractual contacts with the forum state are not *directly* related to Plaintiff's breach of contract claim. Rather, those efforts were an attempt by Defendants to mitigate Plaintiff's damages.

Accordingly, the court may not exercise personal jurisdiction over Defendant, Karri, for the breach of contract claim. *See Trois, supra*.[12]

_____

[12] Of course, the court may exercise personal jurisdiction over Skanda, via general jurisdiction.

18

ii)      *Fraud*

The Fifth Circuit has authorized "the exercise of specific personal jurisdiction over an intentional-tort claim where a nonresident defendant places a call to a forum and makes false statements over the phone to a forum resident." *Trois, supra* (citing *inter alia*, *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes powerful availment.").   The foregoing stems from the rule that, "[w]hen a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction . . ." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir.2007) (quoting *Guidry v. United States Tobacco Co., Inc.,* 188 F.3d 619, 628 (5th Cir.1999)). Therefore, a key negotiating party who makes certain misrepresentations regarding his business in a call to, or via direct communication with, a resident of the forum state, reasonably may anticipate being haled into court in that forum to answer for damages caused by the false representations.   *Trois, supra*.

In this case, Dr. Talbot alleged that Defendants knowingly and falsely represented to Plaintiff that they could provide Plaintiff with the type of mask ordered by Plaintiff, in the quantity ordered by Plaintiff, and on a timely basis.   (2nd Amend. Compl; ¶¶ 28-33). Defendants made these false representations to Plaintiff for the purpose of inducing Plaintiff into entering into a contract for the purchase of one million facemasks.   *Id*.   Relying on Defendants' intentional misrepresentations, Dr. Talbot entered into the purchase agreement with Defendants, and suffered resulting damages.   *Id*.

19

The foregoing fraud allegations suffice to support the exercise of specific jurisdiction over Defendants, Karri and Skanda.   *See Trois, supra*.[13]

When, as here, the plaintiff has made its prima facie case that the non-resident defendant has "minimum contacts" with the forum state, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable.   *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir.2006) (citation omitted).   In conducting the fairness inquiry, the court considers, "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."   *Id*. (citation omitted).   The "primary concern," however, is the burden on the defendant.   *Bristol-Myers Squibb Co.,* 137 S.Ct. at 1780.

Here, Defendant(s) did not seriously argue that the exercise of jurisdiction would be unfair and unreasonable.   Therefore, the court necessarily finds that Defendant(s) failed to

---

[13] Under both Louisiana and federal law, the "fiduciary shield doctrine" provides that "the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity."   *Southeast Wireless Network, Inc., v. U.S. Telemetry Corp.*, 954 So.2d 120, 128 (La. 2007) (citations omitted); *see also General Retail Services, Inc. v. Wireless Toyz Franchise, L.L.C.*, 255 Fed. Appx. 775, 795 (5th Cir. 2007).   The doctrine requires a court to examine the personal and individual contacts between the officer and the forum state.   *Southeast Wireless Network, Inc., supra*.   Karri, however, did not invoke the fiduciary shield doctrine.   In any event, there is an exception to the doctrine that permits the court to exercise jurisdiction over a non-resident defendant whose tortious or fraudulent conduct would subject him to personal liability in the forum state.   *See Southeast Wireless Network, Inc., supra*; *General Retail Services, Inc., supra*; *Endotech USA v. Biocompatibles Intern. PLC*, No. 00-0957, 2000 WL 1594086, at *11-12 (E.D. La. 2000).   The Fifth Circuit has repeatedly recognized that an officer may not use the corporate shield when he commits fraud or intentional torts*.   J&J Sports Prods., Inc. v. Mallet Enterprises, Inc.*, No. 17-4303, 2017 WL 6559887, at *2 (E.D. La. Dec. 21, 2017) (citations omitted).   That exception is applicable in the present context.

establish that the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice."   *See Lewis v. Fresne,* 252 F.3d 352, 359 (5th Cir.2001) (forum state has a significant interest in deciding the dispute because the injured party is a resident of the forum); *Wien Air Alaska, supra* (Defendants' inconvenience in litigating in forum is outweighed by forum state's interest where the dispute involves a defrauded corporation whose principal place of business is in the forum state).   Accordingly, the court finds that it may exercise personal jurisdiction over Defendant(s) on the fraud claim.

## <u>Venue</u>

Defendants further argue that venue does not lie in the Western District of Louisiana.

I.    **Law**

Challenges to venue are properly brought under Rule 12(b)(3).   *Advocacy Center for Elderly and Disabled v. Louisiana Dept. of Health and Hospitals*, 731 F. Supp. 2d 583, 601 (E.D. La. 2010).   "[T]he plaintiff has the burden of proving the district he chose is a district of proper venue."   *Joseph v. Emmons*, Civ. Action No. 04-2843, 2005 U.S. Dist. LEXIS 5528, at *5 (E.D. La. Mar. 22, 2005); *accord Smith v. Fortenberry*, 903 F. Supp. 1018, 1019-20 (E.D. La. 1995).   When considering a Rule 12(b)(3) motion, courts "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."   *See Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 Fed. App'x. 612, 615 (5th Cir. May 11, 2007) (citations omitted). Furthermore, the court may consider evidence beyond the facts "alleged in the complaint and its proper attachments."   *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

Generally, venue must be proper as to each distinct cause of action.   *Tucker v. U.S. Dep't of Army*, 42 F.3d 641, *2 (5th Cir.1994) (unpubl.) (citation omitted).   Under the general venue

statute, a civil action may be brought in –

>   **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
>   **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
>   **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).   However, the court cannot premise venue under § 1391(b)(3) if another venue is already proper under §§ 1391(b)(1) or (b)(2).   *Nat'l Util. Serv., Inc. v. Singularity, Inc.*, No. 18-3142, 2020 WL 264108, at *2 (N.D. Tex. Jan. 16, 2020); *Fowler v. Deloitte & Touche, LLP*, No. 15-2695, 2017 WL 1293983, at *5 (W.D. La. Mar. 24, 2017).

>   Furthermore, for all venue purposes –

>   **(1)** a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled;
>
>   **(2)** an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and
>
>   **(3)** a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.

28 U.S.C. § 1391(c).

## II.   Analysis

At his deposition, Defendant, Karri, admitted that he is not a U.S. citizen or a permanent

resident. (Karri Depo., pgs. 14-15). As such, § 1391(c)(1) is inapplicable. If Karri falls with the category of non-residents as contemplated by § 1391(c)(3), then only the residence of Defendant, Skanda, is relevant to the court's venue analysis. Because Skanda is subject to personal jurisdiction in Louisiana, *see* discussion, *supra*, venue is proper in this district. 28 U.S.C. § 1391(b)(1). In any event, venue also is proper in this judicial district as to all claims and parties because a substantial part of the property that is the subject of the action is situated here – i.e., the 750,000 incorrect and untimely delivered masks. 28 U.S.C. § 1391(b)(2).

## **Transfer**

Defendants alternatively seek to transfer this matter to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1406 and/or 1404. Section 1406 provides, in part, that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Stated differently, § 1406 presupposes that venue is improper in the present forum. Here, however, the undersigned has reached a contrary conclusion. *See* discussion, *supra*. Therefore, by its terms, a transfer via § 1406 is unavailable, and the court must consider Defendants' request to transfer under § 1404.

## I.    **Law**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute is "intended to place discretion in the district

court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."   *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2243 (1988) (citation and internal quotation marks omitted).   "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under '1391 by subjecting defendants to venues that are inconvenient under the terms of' 1404(a)."   *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) (*Volkswagen II*) (citations omitted). *Stewart Org., Inc., supra* (citation and internal quotation marks omitted).

The threshold inquiry under § 1404(a), at least historically,[14] is whether a civil action "might have been brought" in the destination venue.   *Volkswagen II, supra*.   Here, it is not contested that this matter could have been brought in the Central District of California.   Thus, the issue becomes whether Defendants may establish "good cause" for the transfer.   *Volkswagen II, supra* (citation omitted).   To establish "good cause," the moving party must demonstrate that the transferee venue is "clearly more convenient" than the venue initially selected by the plaintiff.   *Id*.   In other words, the plaintiff's choice of forum should not be disturbed unless the transferee forum is "clearly more convenient."   *Id*.

To make this determination, the court considers a number of "not necessarily exhaustive or exclusive" private and public interest factors.   *Volkswagen II*, 545 F.3d at 315.   The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

---

[14]  The Federal Courts Jurisdiction and Venue Clarification Act of 2011 expanded § 1404(a) to permit the parties to transfer the action to any district where they consented (in addition to any district where the action might have been brought).

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. (citations omitted).   The public interest factors are:   "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

With these precepts established, the court will address the relevant considerations, seriatim.

## II.   Analysis

a)   <u>Private Interest Factors</u>

i)   *Relative Ease of Access to Sources of Proof*

Defendants contend that all of the records, documents, data, and other information concerning Skanda's business operations and inventory of products are housed in the Central District of California.   However, it is not clear that Skanda's business operations are primarily relevant to the instant dispute.   Rather, the focus of this case will be upon the terms of the parties' agreement and whether the factory in China complied with those terms.   In that regard, it is not apparent that there will be a significant amount of documentary evidence located in California.   Also, apart from Defendant, Karri, Defendants did not identify any Skanda employees in California who have relevant information.

In contrast, the 750,000 allegedly incorrect masks that Defendants sent to Plaintiff are located in this district.   Furthermore, evidence regarding Plaintiff's damages will be present in this forum.   Therefore, this factor does not favor transfer to California.

ii)    *Availability of Compulsory Process to Secure the Attendance of Witnesses*

Neither side addressed this factor.[15]   However, because Defendants enjoy the burden of proof, their omission renders this factor no more than neutral.   *Sivertson v. Clinton*, Civ. Action No. 11-0836, 2011 WL 4100958 (N.D. Tex. Sept. 14, 2011); *Dymatize Enterprises, Inc. v. Maximum Human Performance, Inc.*, Civ. Action No. 09-1840, 2010 WL 972240 (N.D. Tex. Feb. 28, 2010) *R&R adopted,* 2010 WL 980996 (N.D. Tex. Mar. 16, 2010).[16]

iii)    *Cost of Attendance for Willing Witnesses*

Neither side addressed this factor.   The undersigned emphasizes, however, that when "the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the motion to transfer should be denied."   15 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE ' 3851 (4th ed. 2013).   Defendants' failure to identify their key witnesses compels the court to find that this factor does not weigh in favor of transfer.   *Hills v. Brinks, Inc.*, Civ. Action No. 07-4207, 2008 WL 243944 (E.D. La. Jan. 25, 2008).

Furthermore, in the event that this matter goes to trial, it is likely that the parties to the agreement will constitute the principal witnesses.   The cost to attend trial in this forum likely

---

[15]   In fact, Defendants' brief no more than cursorily addressed the public and private factors, and Plaintiff only touched upon them tangentially, in a different context.

[16]   The court notes that "key witnesses who are employees of those seeking transfer are entitled to less weight in this analysis, simply because their employees can be compelled to give testimony at trial."   *Tegrity Contractors, Inc. v. Spectra Grp., Inc.*, Civ. Action No. 12-2555, 2013 WL 654924 (E.D. La. Feb. 21, 2013) (citations omitted).

will be less than attending trial in comparatively more expensive, Los Angeles, California. Accordingly, this factor does not favor transfer.

> iv)   *All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

The parties did not address this factor.   In the absence of any other viable considerations, the court finds that this factor remains neutral.   *See Dymatize Enterprises, Inc., supra*; *Hills, supra*;


b)   <u>Public Interest Factors</u>

> i)   *Administrative Difficulties Flowing from Court Congestion*

There is no evidence (or argument) that court congestion is any more of a factor in this district and division than in the Central District of California.   Thus, this factor remains neutral. *Tegrity Contractors, Inc., supra*; *Hills, supra*.

> ii)   *Local Interest in Having Localized Interests Decided at Home*

This factor seeks to uphold the ideal that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."   *In re Volkswagen AG,* 371 F.3d 201, 206 (5th Cir.2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839 (1947)).   In this case, however, both the transferor and transferee courts have significant connections to the instant dispute:   Plaintiff and Skanda reside here, whereas Skanda and Karri have substantial ties to California.   Moreover, a material portion of the dispute arises out of events that occurred in this district and division.   Accordingly, this factor remains neutral.

> iii & iv)   *Familiarity of the Forum with the Law That Will Govern the Case; and the*

*Avoidance of Unnecessary Problems of Conflict of Laws [Or In] the Application of Foreign Law*

Plaintiff's complaint includes claims arising under state law.   Insofar as this case will require application of California law, this consideration nominally weighs in favor of transfer. *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1003-04 (E.D. Tex. 2009) (citation omitted). The Supreme Court observed, however, that "federal judges routinely apply the law of a State other than the State in which they sit."   *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49; 134 S.Ct. 568, 584 (2013).   As the Court remarked in *Atlantic Marine Const. Co., Inc.*, the undersigned is not aware of "any exceptionally arcane features of [California] contract law that are likely to defy comprehension by a federal judge sitting in [Louisiana]."   *Id*.

A preliminary question, however, is whether California law should apply at all.   As a court sitting in diversity, choice of law issues are governed by the conflicts rules of the forum state.   *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U. S. 487, 61 S.Ct. 1020 (1941).   Thus, if this case were transferred to California pursuant to § 1404(a), then the transferee court would be obliged to apply the choice of law rules of the transferor state.   *See Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.*, 169 F.3d 947, 949 (5th Cir. 1999) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274 (1990).   With all due deference to the California court, it is manifest that this court has greater experience with, and is better equipped to apply, Louisiana's conflicts of law provisions.   In short, this factor does not favor transfer.

Upon consideration of the relevant factors, the court is not persuaded that the Central District of California is "clearly more convenient," than the instant forum.   Accordingly, Defendants have not demonstrated good cause for the proposed transfer.   28 U.S.C. § 1404(a).

28

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Defendants' motion to dismiss for lack of personal jurisdiction [doc. # 27] be GRANTED-IN-PART, and that Plaintiff's breach of contract claim against Defendant, Nagendra Karri, be DISMISSED, without prejudice.

IT IS FURTHER RECOMMENDED that Defendants' motion to dismiss for lack of personal jurisdiction, improper venue, or, in the alternative, to transfer venue [doc. # 27] otherwise be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 28th day of April, 2021.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE